DISTRICT OF OREGON, ss:                          AFFIDAVIT OF KYLE BEAM

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Kyle Beam, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Task Force Officer (TFO) for the Federal Bureau of Investigation and have aspecial deputation to investigate and enforce violations of Title 21 of the United States Code, which includes controlled substances offenses. I am a Detective employed by the Multnomah County Sheriff's Office, assigned as an investigator with the Multnomah County Sheriff's Office Special Investigations Unit (SIU) – Dangerous Drug Team. I am a sworn police officer and have been since August 2019. I have conducted multiple investigations into drug trafficking offenses and weapons offenses. Through this training and experience, I have become familiar with the way drug traffickers operate to carry out their criminal activity.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for **Cesar Eduardo AGUILAR CRUZ**, d.o.b. XX/XX/2002, for committing the felony offenses of:

>       a.      Possession with Intent to Distribute 40 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B);
>
>       (Hereinafter the "Target Offense")

As set forth below, there is probable cause to believe, and I do believe, that AGUILAR CRUZ committed the Target Offense.

/ / /

/ / /

/ / /

  Page 1 – Affidavit of Kyle Beam

**Applicable Law**

3.      Possession with Intent to Distribute 40 grams or more of a Mixture and Substance containing Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)

**Statement of Probable Cause**

4.      Since January 2026, investigators of the Multnomah County Sheriff's Office Special Investigations Unit (MCSO SIU), have been receiving tips about illegal drug transactions occurring in Luuwit View Park located at 3546 NE 127th Ave, Portland, Oregon 97230. Those tips have been generated from a combination of interviewing confidential reliable informants, cooperating defendants, and drug affected individuals we've interacted with in the public. In summary, those tips provided information specifically pertaining to Honduran drug traffickers frequenting Luuwit View Park and conducting hand to hand drug transactions. Additionally. In response to those tips, MCSO SIU conducted a surveillance operation at Luuwit in January 2026, which led to the arrest of a Honduran male that was in possession of more than one kilogram of fentanyl. MCSO SIU has continued to receive tips consisting of the same information mentioned above. Because of the continued information received, MCSO SIU conducted another surveillance mission with a goal of gathering pertinent information about drug traffickers conducting business in the park.

5.      That same day at approximately 1400 hours, I began walking around Luuwit View Park on foot and other investigators monitored activity from their vehicles. While I was on foot in the park, I observed a male walking through the park. This male was later identified by Honduras passport and King County Washington Court Paperwork as Cesar Eduardo AGUILAR CRUZ. I watched AGUILAR CRUZ lay down in the grass and begin tampering with his

**Page 2 – Affidavit of Kyle Beam**

cellphone. A few minutes after AGUILAR CRUZ arrived, I observed a white female walking around the park. The white female seemed to be aimlessly wandering around the park and walking around with no sense of direction while consistently looking around in different directions of the park. Based on my observations of the female, it appeared as if she was attempting to find someone inside the park.

6.      After a few minutes of observing the white female walking around, I watched her approach AGUILAR CRUZ, who at this time was laying in the grass underneath a tree. The female remained standing and AGUILAR CRUZ, sat upright as she approached. After only a couple seconds of interaction, I watched the female hand what looked like to money to AGUILAR CRUZ. I then watched AGUILAR CRUZ reach into his pocket, grab something, and then hand it to the female. I watched the white female quickly walk away from AGUILAR CRUZ, enter a vehicle in the parking lot, and drive away from the park.

7.      I estimated the overall interaction between the white female and AGUILAR CRUZ to be less than 30 seconds. Based on my above-mentioned observations, in addition to my training and experience, I believed the interaction between AGUILAR CRUZ and the white female was a drug deal.

8.      I continued surveillance of AGUILAR CRUZ. Approximately one hour later, I observed a white sedan driving into the parking lot of Luuwit Park. The white sedan parked next to another vehicle in the lot. I watched two white males walk out from the area where the vehicle was parked, which made be believe they were occupants of the white sedan. Investigators later confirmed those two males exited the two front passenger seats of the white sedan, which an additional occupant remained in the rear passenger. Investigators also later advised me, shortly

**Page 3 – Affidavit of Kyle Beam**

after the white sedan parked, that a Ford truck parked in a spot next to the white sedan. Investigators observed the driver of that Ford exit and enter a passenger seat of the white sedan.

9.     One of the two males that exited the white sedan walked over to AGUILAR CRUZ, who was still laying in the grass underneath a tree. As the male approached AGUILAR CRUZ, I observed the male hand something to AGUILAR CRUZ. I then watched the white male sit in the grass near where AGUILAR CRUZ was laying. I watched AGUILAR CRUZ walk over towards the white sedan, which at that time had two occupants - the individual from the Ford, and the person that remained in the back passenger seat.

10.     Based on my observations and the other investigator's observations, the original three occupants in the white sedan and the driver of the Ford (4 total subjects) all appeared to be "Drug affected" individuals.  Drug affected individuals can be described in a multitude of different ways, however in my experience the most common physical indicators of those individuals are poor hygiene, skin damage (like open soars), uncoordinated movements often causing them to "Shuffle" instead of walk, dark circles around their eyes, poor dental hygiene (like rotting teeth), blueish skin color, slow movements, etc. Oftentimes, the physical indicators of drug affected people depend on the drug they're using. For purposes of this investigations, fentanyl addicts often have pale/bluish colored skin, dark circles under their eyes, obviously slow movements, and when they walk it almost appears as if they're stumbling. Based on my observations and other investigators observations, the AGUILAR CRUZ was interacting with displayed a combination of the above-mentioned physical appearances.

11.     Investigators stated AGUILAR CRUZ remained in the white sedan for a short time and appeared to be exchanging something with them based on his physical movements. Seconds later, I watched AGUILAR CRUZ walk back towards where he was laying in the grass.

**Page 4 – Affidavit of Kyle Beam**

I then watched the two subjects that originally exited the white sedan return to the vehicle and drive away. Investigators stated that the driver of the Ford returned to his vehicle and drove away.

12.    After all four drug affected individuals departed Luuwit Park, AGUILAR CRUZ walked around the outskirts of the park for a few minutes, before he eventually laid down at another location in the park and began manipulating his cellphone again.

13.    Based on all the above-mentioned observations (drug affected individuals, short interactions with hand exchanges, and the original tips received) myself and the other investigators had probable cause to believe AGUILAR CRUZ was committing the offense of 21 U.S.C. 841(a)(1) – Possession with intent to distribute a controlled substance.

14.    Myself and other investigators approached AGUILAR CRUZ on foot and took him into custody. During a search of AGUILAR CRUZ's person, investigators removed what I later counted to be 19 separate bindles of a white rock substance and $620.00 worth of US Currency. I later tested a portion of that white rock substance (using a Mobile Detect Kit), which determined the white rock substance was presumptive positive for fentanyl – a schedule II drug . After determining the substance was fentanyl, I later weighed all the bindles which had a combined 131.6 grams.

15.    AGUILAR CRUZ spoke primarily Spanish, therefore we communicated with him via language line interpreter. Investigators advised AGUILAR CRUZ of his *Miranda warnings*, which he confirmed that he understood and was willing to speak with us. AGUILAR CRUZ told me and other investigators the following in summary: That he was from Honduras. AGUILAR CRUZ stated he jumped the wall at the United States border and travelled to Seattle, Washington. AGUILAR CRUZ stated that he needed money, therefore the day prior (June 23, 2026) he met a

**Page 5 – Affidavit of Kyle Beam**

friend at a gas station in Seattle and the "Friend" told him that he had a "Present" for him. The male then handed him fentanyl and told him he could sell it for money. Afterwards, he travelled to Portland, Oregon and began selling the fentanyl to people at Luuwit Park. AGUILAR CRUZ confirmed that he sold fentanyl to the drug affected individuals we watched him interact with. AGUILAR CRUZ stated that he would sell "1/8th" of fentanyl or 3.5 grams – aka an "Eightball" for $180.

16.    I verbally read AGUILAR CRUZ a Multnomah County Sheriff's Office "Consent to Search" form with the aid of a Spanish translator. AGUILAR CRUZ verbalized that he understood and would consent to a search of his Apple iPhone, his vehicle which was parked on NE 131st Ave (bordering Luuwit View Park), and his hotel room which he identified as room #109 at the "Aloft Portland Airport at Cascade Station Hotel" located at 9920 NE Cascades Pkwy, Portland, OR).

17.    During a search of AGUILAR CRUZ's vehicle, investigators located a drug scale with white residue (suspected fentanyl). Investigators did not locate anything of substance in AGUILAR CRUZ's hotel room. AGUILAR CRUZ's cellphone data is all transcribed in the Spanish language, therefore at this point I cannot confirm whether his cellphone contains any pertinent information relevant to the Target Offense at this time.

18.    I reviewed AGUILAR CRUZ's criminal history and learned that he has two recent arrest cycles in King County Superior Court in Seattle, Washington. Both arrest cycles occurred on 04/16/2025 and 05/30/2025. They list the criminal charges as a controlled substance offense in schedule I/II narcotic. Both cycles show the disposition to be pending. Additionally, I learned that AGUILAR CRUZ has an active arrest warrant out of Seattle, and within the State of Washington for drug crimes only.

 Page 6 – Affidavit of Kyle Beam

**Training and Experience with Fentanyl Investigations**

19.     I know that fentanyl is a Schedule II controlled substance and an extremely powerful synthetic opioid that is approximately 100 times more potent than morphine and 50 times more potent than heroin.  I know that 2 mg. of fentanyl can be a potentially fatal dose.  I know that fentanyl traffickers regularly buy and sell bulk fentanyl pills (counterfeit M30 pills manufactured with fentanyl), as well as bulk fentanyl powder.  I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M30 pills that they will then burn it on a piece of tin foil and inhale the fumes, sometimes by using a straw.  Sometimes a user will simply ingest the pills or inhale the powdered fentanyl.  I know that fentanyl addicts on the street do not regularly stockpile large amounts of fentanyl but rather tend to buy a small amount of what they need and then resupply themselves when they run out.  I know that a user of powdered fentanyl will use it in quantities of less than 1/10 of a gram and will regularly buy it in amounts of less than a gram up to a couple of grams at a time.  I know that users of fentanyl pills will regularly use one pill at a time and may buy and use up to 10 to 15, or more, pills in a day depending on their level of addiction.

20.     I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities of a gram or less.  I know that deals of fentanyl pills will regularly buy larger amounts of pills, such as a "boat" of pills and then break that amount down for purposes of further distribution.  I know that a person possessing over 10 grams of fentanyl powder or 10 grams of fentanyl pills (approximately 100 pills) does not possess the fentanyl for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.  Also, during the search of **AGUILAR CRUZ,** his vehicle, and his hotel

  **Page 7 – Affidavit of Kyle Beam**

room, we did not find any indicia, such as burn pieces of foil and straws that appeared to be used to inhale smoke from fentanyl, that indicated he was smoking and using fentanyl. In addition, I know based on my training and experience that scales, such as the one found in **AGUILAR CRUZ's** vehicle are regularly used by drug dealers to weigh their drugs for sale, since weights of drugs correspond to specific prices for drugs.

### Conclusion

21.     Based on the foregoing, I have probable cause to believe, and I do believe, that Cesar Eduardo AGUILAR CRUZ committed the Target Offense and I therefore request that the Court issue a criminal complaint and arrest warrant for **AGUILAR CRUZ** for committing those offenses.

22.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Kemp L. Strickland, and AUSA Strickland advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Kyle Beam, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __2:00____ a.m./p.m. on June 25, 2026.

_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge

**Page 8 – Affidavit of Kyle Beam**